UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ALBERTO CONDOLEO and ANNA
CONDOLEO,

                              Plaintiffs,              **REPORT AND**
                                                      **RECOMMENDATION**
              -against-                               15-CV-4677 (SJF) (ARL)

GUANGZHOU JINDO CONTAINER CO., LTD.,
et al.,
                              Defendants.
-----------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

        Plaintiffs Alberto and Anna Condoleo (collectively, "Plaintiffs") bring this action to

recover for personal injuries allegedly sustained by Alberto Condoleo when the rear steel header

beam of a shipping container fell and struck him.  Plaintiffs assert claims for against Guangzhou

Jindo Container Co., Ltd. ("GJC"), Bridgehead Container Services Ltd. ("Bridgehead"), APL

Co. Pte Ltd., and American President Lines, Ltd. (together with APL Co. Pte Ltd., "APL").

Before the Court, on referral from District Judge Feuerstein, are the motions by Defendants

Bridgehead and APL for summary judgment pursuant to Federal Rule of Civil Procedure

("Rule") 56.  For the reasons set forth below, the Court respectfully recommends that

Defendants' motions be granted.

**BACKGROUND**

**I.      Procedural History**

        Plaintiffs commenced this action on August 10, 2015 naming GJC, Bridgehead and APL

as Defendants and asserting claims for breach of warranty, negligence, and loss of consortium

against all Defendants and, additionally, a claim for strict products liability against GJC.  ECF

No. 1.  GJC has never been served with the complaint despite a series of extensions granted to

Plaintiffs to allow service to be effectuated pursuant to the Hague Convention. *See* ECF Nos. 14, 19, 20, 21.

Bridgehead answered the complaint and asserted crossclaims against all defendants on October 7, 2015. ECF No. 11. APL answered and asserted crossclaims against GJC on December 28, 2015. ECF No. 17. On January 13, 2017, APL filed a Third Party Complaint against HMJ Trucking, LLC. ("HMJ"). ECF No. 29. On June 15, 2017, APL filed a second Third Party Complaint against Salson Logistics, Inc. ("Salson"). ECF No. 39. On September 1, 2017, Bridgehead voluntarily dismissed its crossclaims against APL. ECF No. 44. By Order dated May 25, 2018, APL's Third-party claims against HMJ and Salson were dismissed. ECF No. 69.

Shortly thereafter, on June 28, 2018, Bridgehead moved for summary judgement. In support of the motion for summary judgment Bridgehead relies upon the declaration of Gino Zonghetti, counsel for Bridgehead, attaching excerpts of the deposition of Harmeet Singh and Lashhkar Singh, and the declaration of Brian R. Bibby, chairman of Bridgehead, attaching exhibits ("Bibby Decl."). Bridgehead also submitted its Rule 56.1 Statement ("Bridgehead Rule 56.1 Stmt.") and Memorandum of Law in Support of Defendant Bridgehead Container Services Ltd.'s Motion For an Order Granting Summary Judgement and Dismissing the Complaint Pursuant to Federal Rule of Civil Procedure 56 ("Bridgehead Mem."). In opposition to Bridgehead's motion, Plaintiffs rely upon their Memorandum of Law in Opposition to Defendants' Respective Motions for Summary Judgment ("Pls. Mem.") and Plaintiffs' Rule 56.1 Counterstatement ("Pls. Rule 56.1 Stmt.") attaching as exhibits a letter from Plaintiffs' expert, a declaration of Plaintiff Alberto Condoleo and an excerpt from the Guide for Open Top Container Equipment Inspection published by the Institute of International Container Lessors. Bridgehead

2

also submitted a Reply Memorandum of Law in Support of Motion for Summary Judgment to Dismiss the Complaint (Bridgehead Reply. Mem.) and a second declaration of Gino Zonghetti. ECF No. 73

On June 29, 2018, APL moved for summary judgment. In support of the motion for summary judgment APL relies upon the affirmation of Justin T. Nastro counsel for APL, attaching copies of pleadings as well as documentary evidence in support of APL's motion for summary judgment and excerpts of the deposition of Alberto Condoleo ("Nastro Aff.") and the declaration of Bryan Bauernfeind, former senior manager of operations for APL ("Bauernfeind Decl."). APL also submitted its Rule 56.1 Statement ("APL Rule 56.1 Stmt.") and Memorandum of Law in Support of Motion Summary Judgement To Dismiss the Complaint ("APL Mem."). In opposition to APL's motion, Plaintiffs rely upon their Memorandum of Law in Opposition to Defendants' Respective Motions for Summary Judgment and Plaintiffs' Rule 56.1 Counterstatement ("Pls. APL Rule 56.1 Stmt.") attaching as exhibits a letter from Plaintiffs' expert, a declaration of Plaintiff Alberto Condoleo and an excerpt from the Guide for Open Top Container Equipment Inspection published by the Institute of International Container Lessors. APL also submitted a Reply Memorandum of Law in Support of Motion for Summary Judgment to Dismiss the Complaint, a second declaration of Justin T. Nastro and a second declaration Bryan Bauernfeind, former senior manager of operations for APL ("Bauernfeind Reply Decl."). ECF No. 74.

By Order dated July 26, 2018, Judge Feuerstein referred the motions filed by Bridgehead and APL to the undersigned to issue a Report and Recommendation.

## II.    Factual Background

The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are

3

uncontested unless otherwise noted.

Plaintiff Alberto Condoleo is the owner of Bella Italia Granite & Marble located in Oceanside, New York.  APL Rule 56.1 Stmt. ¶ 1.  Plaintiff Anna Condoleo is his wife.  Compl. ¶ 3.

Defendant Bridgehead is in the business of leasing shipping containers and other related equipment and is owned, operated in and formed under the laws of the United Kingdom. Bridgehead Def. Rule 56.1 Stmt. ¶¶ 1-2.  The company is located at the Cunard Building, Water Street, Liverpool L3 1Ds, England.  *Id.*  Defendant APL Co. Pte Ltd is engaged in business as a common carrier of merchandise by water for hire and is incorporated in Singapore with its principal place of business in Singapore.  APL Rule 56.1 Stmt. ¶ 4, Compl. ¶ 8.  APL, in its Answer, asserts that APL. Ltd. USA, named by Plaintiffs is incorrectly named and the proper name of the entity is American President Lines, Ltd. a Delaware corporation, with its principal place of business in Arizona.  Am. Ans. ¶ 10ECF No. 18.  Specifically, APL issues bills of lading for the ocean carriage of shipping containers which are transported to ports around the world on container ships owned or charted by APL.  These shipments are all governed by the APL bill of lading terms and conditions.  APL Rule 56.1 Stmt. ¶ 4.

Plaintiff Alberto Condoleo alleges that on August 11, 2012 he was involved in an accident when the rear steel header bar on Bridgehead container number BHCU223132[1] broke and fell on him causing injury.  APL Rule 56.1 Stmt. ¶ 3.  The container was manufactured by GJC, *id.* at ¶ 7, and Bridgehead was the owner of the container.  Bridgehead Rule 56.1 Stmt. at ¶ 3.  The container was leased by Bridgehead to APL pursuant to a written lease agreement, "APL CO. PTE LTD. AGREEMENT ON GENERAL TERM AND CONDITIONS – EQUIPMENT

---

[1] The Court notes that the shipping container is identified as BHCU2231321 in the Bridgehead Rule 56.1 Statement.

VERSION 001998," effective on March 1, 1998 ("Master Lease"). Bridgehead Rule 56.1 Stmt. at ¶ 5. The container was leased by Bridgehead to APL pursuant to the Master Lease and APL took over possession, custody, and control of the container beginning on October 23, 2008. *Id.* at ¶ 7. Pursuant to section five of the Master Lease, "OPERATION, MAINTENANCE, AND REPAIR." "Lessee shall, at Lessee's sole cost and expense keep and maintain the Equipment, and all additional attachments and accessories thereto, at all times during the terms of this Agreement, and any extension hereof, in good repair and safe operating condition." *Id.* at ¶ 10.

According to APL, on or about July 4, 2012, APL issued a bill of lading for the transport of container BHCU223132 from the Port of Chennai, India to the Port of New York, United States. APL Rule 56.1 Stmt. at ¶ 5. APL also asserts that based upon the terms of the bill of lading, APL was contracted only to transport this container from one port to another. APL was not involved in, nor compensated to transport the container from the port to the inland place of delivery. *Id.* at ¶ 6. APL has submitted a declaration from its former senior manager of operations indicating that the container was discharged from APL's vessel at Maher Terminal on August 8, 2012 and inspected by Maher Terminal employees. Bauernfeind Decl. at ¶ 10. On August 8, 2012 the container was picked up by Salson. *Id.* at ¶ 11. Salson trucked the container to its facility in Newark New Jersey, where it was inspected by U.S. Customs. *Id.* at ¶ 12. On August 10, 2012, Salson relinquished custody of the container to HMJ. *Id.* at ¶ 13. On August 11, 2012, HJM transported the container to Bella Italia Granite & Marble and HMJ did not report any damage to the container to APL. APL Rule 56.1 Stmt. at ¶ 17, 19.

On August 11, 2012, Plaintiff Alberto Condoleo opened the container door and swung open the header bar before unloading the cargo inside. *Id.* at ¶ 20. It took Plaintiff Alberto Condoleo and his workers approximately one hour and forty-five minutes to unload cargo from

the container. *Id.* at ¶ 22. After the contents where emptied, and while in the process of swinging the door closed, Plaintiff Condoleo contends that the lower hinge of the header bar broke, causing the header bar to break off from the container and strike him. *Id.* at ¶ 24.

## DISCUSSION

### I.  Standard of Law

#### A.  Summary Judgment

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead*, No. 10 CV 1928, 2012 WL 4172010, *6 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.,* 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)).  In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998).  If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996), *cert denied*, 520 U.S. 1228 (1997).

The trial court's responsibility is "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994).  When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "[T]here must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a

particular claim." *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *Celotex*, 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

## II.    Analysis

### A.  Breach of Warranty

In the First Cause of Action, Plaintiffs allege that Defendants Bridgehead and APL breached the express representation about the quality, design and fitness of the container, Compl. ¶ 22, and also breached warranties that the product would operate as promised. *Id.* at ¶ 25.

#### 1.  Express Warranty

With respect to Plaintiffs' claim for breach of express warranty, Defendant Bridgehead argues that there is no evidence in the record to support this claim. Bridgehead Mem. at 16. Similarly, APL argues that Plaintiffs have failed to present evidence indicating an express warranty was made, and moreover, because APL was not a seller of the container within the meaning of the UCC, it cannot be liable for breach of express warranties as a matter of law. Plaintiffs do not respond to either of these arguments.

To state a claim for breach of express warranty under New York law, a plaintiff must allege "[1] a material statement amounting to a warranty; [2] the buyer's reliance on this warranty as a basis for the contract with his immediate seller; [3] the breach of this warranty; and [4]

injury to the buyer caused by the breach*."[2] Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (citing *CBS Inc. v. Ziff-Davis Pub. Co.,* 75 N.Y.2d 496, 503, 553 N.E.2d 997, 1000, 554 N.Y.S.2d 449 (1990)). "'Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.'" *Sitt v. Nature's Bounty, Inc.,* No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, 2016 WL 5372794, at *15 (E.D.N.Y. Sept. 26, 2016) (quoting N.Y. U.C.C. § 2-313(1)(b)); *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.") (citation and internal quotation marks omitted). To state a claim for breach of express warranty, plaintiff must allege that "there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742, 2011 U.S. Dist. LEXIS 6094, 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011) (quoting *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 604 (S.D.N.Y.2010)); *Jones by Jones v. Lederle Labs.*, 695 F. Supp. 700, 709 (E.D.N.Y. 1988)).

Since Plaintiffs have failed to identify an affirmation of fact by either Defendant amounting to a warranty, it is respectfully recommended that Bridgehead's and APL's motion

---

[2] The parties do not address what law governs this action. "In a diversity case, we apply the choice of law rules of the forum state--in this case New York--to determine what law governs the issues arising under state law." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). A federal court sitting in diversity applies state substantive law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law"). Here, applying the choice-of-law rules of New York, the Court has determined that New York law applies. The parties do not dispute that New York law governs this action and have cited to New York law in their papers.

for summary judgment with respect to Plaintiffs' claim for breach of express warranty be granted.

### 2. Implied Warranty

Bridgehead argues that Plaintiffs' claim for breach of implied warranty fails because Plaintiffs have failed to produce evidence establishing that the subject container was not fit for its intended purpose, and that any claim for breach of implied warranty against Bridgehead is barred by the statute of limitations.[3] Bridgehead Mem. at 3 and Reply Mem. at 8. APL argues that it cannot be liable for breach of implied warranty because Plaintiff has failed to establish that the product was not "reasonably fit . . . for its intended purpose" and APL was not a merchant as required by New York law. APL Mem. at 17. In response, Plaintiffs argue that their expert, David P. Poper opined that "the accident container was not fit for its intended use because the header beam hinge portion, the part that ultimately fractured, was defective." Pls. Mem. at 5-6.

"Implied warranties include the implied warranty of merchantability and the implied warranty of fitness for a particular purpose." *Jackson v. Eddy's LI RV Ctr. Inc.,* 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012). Here, Plaintiffs are pursuing a claim based upon a breach of the implied warranty of fitness for a particular purpose. Compl. ¶ 21. "For an implied warranty of fitness for a particular purpose to arise, the buyer must demonstrate that the seller, at the time of contracting, had reason to know any particular purpose for which the goods were required and

---

[3] Bridgehead raised this argument with respect to the running of the statute of limitations for the first time in its reply papers. A court may decline to consider a new argument in support of a motion for summary judgment raised for the first time in a reply brief. *See John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987) (holding that it is error for a court to grant summary judgment on a ground not properly raised); *Barnett v. Rutgers Univ.*, No. 17-2503, 2018 U.S. Dist. LEXIS 43953, 2018 WL 1385664 (D.N.J. Mar. 16, 2018) (refusing to consider arguments raised for the first time on reply). On March 26, 2019, this Court directed Plaintiffs to respond to Bridgehead's argument with respect to the running of the statute of limitations. Plaintiffs filed Plaintiffs' Memorandum of Law in Sur-Reply ("Pls. Sur-Reply Mem.") on April 10, 2019. Pursuant to this Court's Order, Bridgehead had until April 15, 2019 to reply to Plaintiffs' position. Bridgehead did not file a reply.

that the buyer was relying on the sellers skill or judgment to select or furnish suitable goods and that the buyer did in fact rely on that skill. U.C.C. § 2-315." *Bellantoni v. GMC*, No. 08 Civ. 2407 (CS)(GAY), 2012 U.S. Dist. LEXIS 74865 (S.D.N.Y. May 3, 2012).

The Court turns first to Defendant Bridgehead. Under New York law, a commercial lessor who introduces a defective product into the marketplace, and who is "in the business" of leasing the particular product, is subject to claims for breach of warranty. *See Adeyinka v. Yankee Fiber Control, Inc.,* 564 F. Supp. 2d 265, 275 (S.D.N.Y. 2008); *Assam v. Deer Park Spring Water, Inc.,* 163 F.R.D. 400, 405 (E.D.N.Y. 1995); *Winckel v. Atlantic Rentals & Sales, Inc.,* 159 A.D.2d 124, 557 N.Y.S.2d 951 (2d Dep't 1990). As a lessor of shipping containers Bridgehead may clearly be held liable for breach of implied warranty, Bridgehead however argues that there is no evidence that the container was not fit for its purpose and therefore summary judgment should be granted in its favor. Bridgehead Mem. at 14-15.

In response, Plaintiffs have proffered the expert report of David Pope concluding that the container at issue was not fit for a particular purpose "because the header beam hinge portion, the part that ultimately fractured, was defective." Pls. Mem. at 6. The report concludes that the hinge was defective because it was not heat treated, which caused it to be brittle and "[a] brittle material catastrophically fails without warning, that is, it does not macroscopically deform or give any other indication of impending fracture. Structural components (such as the failed hinge) that are made of a brittle material are defective, since they are subject to sudden catastrophic failure during ordinary use." Pls. Rule 56.1 Stmt. at p. 22. Defendants argue that Plaintiffs' expert's opinion does not support Plaintiffs' position because the expert "gives no opinion that this rendered the container unsuitable for its intended use." Bridgehead Reply. Mem. at 7.[4]

---

[4] In their Rule 56.1 Counterstatement responding to Bridgehead's motion, Plaintiffs contend they are entitled to an adverse inference regarding Bridgehead's destruction of the header beam and a portion of the fractured hinge. Pls.

Plaintiffs' reliance upon the four-page unsworn letter from David P. Pope faces a significant hurdle. "At summary judgment, 'a district [c]ourt properly considers only evidence that would be admissible at trial,' as required by Rule 56. *Reza v. Khatun*, No. 09-CV-233 (MKB), 017 U.S. Dist. LEXIS 116080, 2017 WL 3172816 (E.D.N.Y. July 25, 2017) (quoting *Nora Bevs., Inc. v. Perrier Group of Am. Inc.,* 164 F.3d 736, 746 (2d Cir. 1998) and citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling a motion for summary judgment."). "Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used [on] a motion for summary judgment without additional affidavit support." *Glowczenski v. Taser Int'l, Inc.*, No. 04-CV-4052, 2010 U.S. Dist. LEXIS 47269, 2010 WL 1957289, at *2 (E.D.N.Y. May 13, 2010) (collecting cases); *Gotlin v. Lederman*, 616 F. Supp. 2d 376, 389 (E.D.N.Y. 2009); *Berk v. St. Vincent's Hosp. & Med. Ctr.,* 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005); see also *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (acknowledging that unsworn expert statements are inadmissible hearsay on a motion for summary judgment); *Cornell Research Found., Inc. v. Hewlett—Packard Co.*, No. 5:01-CV-1974, 2007 U.S. Dist. LEXIS 89637, 2007 WL 4349135, at *19 (N.D.N.Y. Jan. 31, 2007) (finding that the great weight of authority supports the position that unsworn expert reports "constitute inadmissible hearsay and thus are not worthy of consideration on a motion for summary judgment").

Thus, excluding the unsworn letter from Plaintiffs' expert leaves Plaintiff with only the

---

Rule 56.1 Stmt. ¶¶28-31. An analysis of the spoliation issue on summary judgment would be appropriate only if this Court concludes that the loss of the header beam was willful or in bad faith or has prejudiced the Plaintiff at this stage of the litigation. *See Tedone v. H.J. Heinz Co.,* 686 F. Supp. 2d 300, 312 (S.D.N.Y. 2009). The condition of the header beam is not a factor in the Court's analysis with respect to Bridgehead's and APL's motions for summary judgment and therefore any consideration of the spoliation issue would be premature at this time.

brief declaration of Plaintiff Alberto Condoleo describing his position at the time the rear header beam fell and an excerpt from the Guide for Open Top Container Equipment Inspection published by the Institute of International Container Lessors in opposition to Defendants' motion for summary judgment. Neither of these documents provide any evidence supporting Plaintiffs' claim that the container in issue was unfit for the purpose intended. Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Accordingly, the undersigned respectfully recommends that Bridgehead's motion for summary judgment with respect to Plaintiffs' claim of breach of implied warranty be granted.

Bridgehead also argues that Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose is barred by the statute of limitations. Bridgehead Reply Mem. at 8-10. As discussed above, Plaintiffs were afforded the opportunity to provide additional briefing in response to Bridgehead's argument which was raised for the first time on reply. Plaintiffs argue that Bridgehead has omitted from its papers any reference to the delivery date of the container in question and therefore summary judgment is inappropriate. *See* Pls. Sur-reply at 7-8. The Court disagrees.

The limitations period for causes of action for breach of implied warranty for the sale of goods, set forth in section 2-725 of the New York Uniform Commercial Code, is four years. *See, e.g., Viania v. Zimmer, Inc., No.* 2:17-cv-1641(ADS) (AYS), 2017 U.S. Dist. LEXIS 195183, 2017 WL 5714725 (E.D.N.Y. Nov. 27, 2017); *Lara v. Delta Int'l Mach. Corp.,* 174 F. Supp. 3d 719, 745 (E.D.N.Y. 2016); *Heller v. U.S. Suzuki Motor Corp.,* 64 N.Y.2d 407, 411, 477 N.E.2d 434, 488 N.Y.S.2d 132 (1985). "Under this section, a breach of warranty 'cause of action

against a manufacturer or distributor accrues on the date the party charged tenders delivery of the product, not on the date that some third party sells it to plaintiff.'" *Erazo v. SCM Grp. N. Am.,* No. 16-CV-2386 (RRM) (RER), 2019 U.S. Dist. LEXIS 35324, 2019 WL 1044365 (E.D.N.Y. Mar. 5, 2019) (quoting *Heller,* 64 N.Y.2d at 411)). As recognized by Plaintiffs, the statute of limitations begins to run at the time the product is placed into the stream of commerce. *See, e.g., Cerqua v. Stryker Corp.,* No. 11-CV-9208 (KBF), 2012 U.S. Dist. LEXIS 162833, 2012 WL 5506119, at *3 (S.D.N.Y. Nov. 9, 2012); *Hanlon v. Gliatech, Inc.,* No. CV-07-1737 (SJF)(AKT), 2008 U.S. Dist. LEXIS 88114 at * 13, 2008 WL 4773430 (E.D.N.Y. Oct. 27, 2008). Bridgehead, in its Rule 56.1 Statement, averred that October 23, 2008 is the date APL took possession, custody and control of the container. Bridgehead Rule 56.1 Stmt. ¶ 7. This statement of fact was admitted by Plaintiffs. Bridgehead also provided declaration from its Chairman attesting to the fact that "[f]rom October 23, 2008, up to and including August 11, 2012, APL had exclusive custody and control over the subject container in this lawsuit." Bibby Decl. at ¶ 11. In addition, Plaintiffs further averred in their Rule 56.1 Counterstatement that "Bridgehead put the new subject container into the stream of commerce on October 23, 2008, by leasing it to co-defendant, APL." Pl. Rule 56.1 Stmt. at ¶ 19. Thus, there is no question of fact regarding the accrual of the statute of limitations – October 23, 2008, the date Bridgehead placed to subject container into the stream of commerce by relinquishing custody and control over the container to APL. Since this action was commenced on August 10, 2015, well after the running of the four-year statute of limitations applicable to this claim, the undersigned respectfully recommends that Bridgehead's motion for summary judgment with respect to Plaintiffs' claim for breach of implied warranty be granted.

With respect to Defendant APL, "[l]iability may not be imposed for breach of warranty

13

upon a party that is outside the manufacturing, selling or distribution chain." *Ito v. Marvin Windows of New York, Inc.*, 54 A.D.3d 1002, 1003, 865 N.Y.S.2d 119 (2d Dept. 2008). APL was a lessee of the container which it used to provide shipping services to Plaintiffs. It was not in the business of selling or leasing containers and accordingly cannot be held liable for breach of the implied warranty of fitness for a particular purpose. Accordingly, the undersigned respectfully recommends that APL's motion for summary judgment on Plaintiffs' claim of breach of implied warranty be granted.

### 3. Negligence Claims

Defendants Bridgehead and APL have moved for summary judgment with respect to Plaintiffs' negligence claim. Bridgehead argues that as a lessor of the equipment it had no obligation to operate, maintain or repair the container and therefore owed Plaintiffs no duty of care. Bridgehead Mem. at 9-12. Plaintiffs concede that Bridgehead may not be held liable for a claim for negligence because it was not in possession of the container and was under no obligation to inspect the container.[5] Pls. Mem. at 5. Accordingly, with respect to Plaintiffs' negligence claims against Bridgehead the Court respectfully recommends that Bridgehead's motion for summary judgment be granted.

APL argues that Plaintiffs' negligence claims must be dismissed on the grounds that APL fully discharged its duty to Plaintiff prior to the accident, APL's care and custody for the container ended at the New York Port, Plaintiffs have failed to present evidence indicating that APL breached its duty to inspect and maintain the container and this breach caused Plaintiffs' injury. APL Mem. at 9-13. In response, Plaintiffs contend that they can rely upon the doctrine of *res ipsa loquitur* to prove this case. Pls. Mem. at 3.

---

[5] This concession also precludes Plaintiffs' claim for gross negligence against Bridgehead.

"In New York, a case may not be submitted to a jury on the theory of *res ipsa loquitur* unless the plaintiff demonstrates that: (1) the event is of a kind that ordinarily does not occur in the absence of someone's negligence; (2) the event is caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the event is not due to any voluntary action or contribution on the part of the plaintiff." *Flowers v. Delta Air Lines, Inc.,* No. 00 CV 783 (ILG), 2001 U.S. Dist. LEXIS 19878 *11, 2001 WL 1590511 (E.D.N.Y. Nov. 7, 2001) (quoting *Kambat v. St. Francis Hosp.*, 89 N.Y.2d 489, 494, 655 N.Y.S.2d 844, 846, 678 N.E.2d 456 (1997); *Ebanks v. N.Y.C. Transit Auth.*, 70 N.Y.2d 621, 623, 518 N.Y.S.2d 776, 777, 512 N.E.2d 297 (1987); *Dermatossian v. N.Y.C. Transit Auth.,* 67 N.Y.2d 219, 226, 492 N.E.2d 1200, 501 N.Y.S.2d 784, 788 (1986)); *see also Michael v. GM Co.*, No. 15 Civ. 3659 (CM), 2018 U.S. Dist. LEXIS 194219 at * 16 (S.D.N.Y. Nov. 13, 2018) ("plaintiff must clear certain hurdles" before the doctrine of *res ipsa loquitur* can apply); *Hammond v. Lincoln Tech. Inst., Inc.*, 2012 U.S. Dist. LEXIS 10902 ("In order for a case to be submitted to a jury with an inference of negligence under res ipsa loquitur, plaintiff must establish three elements").  According to the New York Court of Appeals

> [t]o rely on res ipsa loquitur a plaintiff need not conclusively eliminate the possibility of all other causes of the injury. It is enough that the evidence supporting the three conditions afford a rational basis for concluding that it is more likely than not that the injury was caused by defendant's negligence.  Stated otherwise, all that is required is that the likelihood of other possible causes of the injury be so reduced that the greater probability lies at defendant's door.

*Kambat,* 89 N.Y.2d  at 494-95 (internal quotation and citation omitted).

Here, Plaintiffs cannot satisfy the second prong of this test and therefore cannot rely upon the theory of *res ipsa loquitur*.  In *St. Paul Fire*, the Second Circuit discussed the "exclusive control" prong necessary to invoke *res ipsa loquitur* noting that "[t]he purpose of the exclusive control requirement is to eliminate within reason the possibility that the event was caused by

15

someone other than the defendant." 907 F.2d at 302-03. In general, "it is not enough to prove that the defendant had control if there is sufficient evidence that a third party also had access to the instrumentality that caused the injury." *Id.* at 303. For this reason, "proof that third parties have had access to the instrumentality generally [means that] the owner's negligence cannot be inferred." *St. Paul Fire*, 907 F.2d at 303 (citing *De Witt Properties v. City of N.Y.*, 44 N.Y.2d 417, 426, 406 N.Y.S.2d 16, 17, 377 N.E.2d 461 (1978)). New York courts routinely find the element of exclusive control lacking where the object in question was handled by third parties. *See, e.g., Hammond v. Lincoln Tech. Inst., Inc.*, No. 10-cv-1933, 2012 U.S. Dist. LEXIS 10902, 2012 WL 273067, at \*2 n.3 (E.D.N.Y. Jan. 30, 2012) (machinery in a classroom used by multiple students was not within defendants' exclusive control).[6] "[E]xclusive control is not a rigid concept; rather, it is 'subordinated to its general purpose, that of indicating that it probably was the defendant's negligence which caused the accident.'" *Stone v. Courtyard Mgmt. Corp.*, 353 F.3d 155, 159 (2d Cir. 2003) (quoting *Corcoran v. Banner Super Mkt., Inc.*, 19 N.Y.2d 425, 432, 227 N.E.2d 304, 280 N.Y.S.2d 385 (1967)). As the Second Circuit noted, "'[t]he appropriate target of inquiry is whether the broken component itself was generally handled by the public, not whether the public used the larger object to which the defective piece was attached.'" *Stone*, 353 F.3d at 159 (quoting *Pavon v. Rudin*, 254 A.D.2d 143, 146, 679 N.Y.S.2d

---

[6] Plaintiffs rely upon *Pavon v Rudin*, 254 A.D.2d 143, 679 N.Y.S.2d 27 (1st Dep't 1998), in support of their argument that the doctrine of *res ipsa* should be applied in this case. In *Pavon*, the plaintiff sustained severe head, neck, and back injuries when she was allegedly struck on the head by a heavy door as she was leaving an interior room of the defendant's business. *See id.* at 143. The door apparently dislodged after the top pivot hinge holding it to the frame broke and tore from the door frame. *See id.* The defendant moved for summary judgment dismissing the complaint, arguing that the plaintiff could not establish her prima facie case because the defendant had no notice of the alleged defect and because it neither installed nor manufactured the door. *See id.* at 144. In opposition, the plaintiff argued a *res ipsa* theory. *See id.* The plaintiff's expert opined that the accident had several possible causes: "the pivot hinge 'was either of insufficient strength to sustain the load of the door (i.e. the wrong pivot hinge for the door), improperly installed or defective.'" *Id.* The door at issue in Pavon was on the defendant's premises and while others may have used the door, the hinge holding the door was within defendant's exclusive control. Here, however, the entire container, hinge and all, was outside of APL's control for at least three days prior to the accident. Therefore, Plaintiffs are not entitled to a presumption that the negligence was attributable to APL.

27 (1st Dep't 1998)).

APL has presented uncontested evidence that the container (and the hinge) were not in its exclusive control prior to and at the time of the accident. The container was discharged from APL's vessel at Maher Terminal on August 8, 2012 and inspected by Maher Terminal employees. Bauernfeind Decl. at ¶ 10. On August 8, 2012 the container was picked up by Salson. *Id.* at ¶ 11. Salson trucked the container to its facility in Newark New Jersey, where it was inspected by U.S. Customs. *Id.* at ¶ 12. On August 10, 2012, Salson relinquished custody of the container to HMJ. *Id.* at ¶ 13. On August 11, 2012, HMJ transported the container to Bella Italia, Plaintiff's place of business, where he and his employees unloaded the container. *Id.* at ¶ 14; Compl ¶ 16. At each of these exchanges there is the possibility of damage to the container and the hinge outside of APL's control. "To avoid summary judgment, [Plaintiff] was obligated simply to establish a reasonable probability that the accident was caused by [defendants'] negligence." *Williams v. KFC Nat'l Mgmt. Co.,* 391 F.3d 411, 420 (2d Cir. 2004). Based upon this uncontroverted evidence that the container was outside the exclusive control of APL leading up to and at the time of the accident Plaintiffs are not entitled to an inference of negligence under *res ipsa loquitur.*

Even absent the application of the doctrine of *res ipsa loquitur* to the facts of this case APL must demonstrate that Plaintiffs cannot succeed on a traditional negligence theory in order to prevail on summary judgment. In order for APL to be held liable for a defect in the hinge supporting the head beam, Plaintiffs must prove that APL either created the defect, or had actual or constructive notice of it. *See, e.g., Flowers v. Delta Air Lines, Inc.,* No. 00-cv-783, 2001 U.S. Dist. LEXIS 19878, 2001 WL 1590511 (E.D.N.Y. Nov. 7, 2001); *Gordon v. Am. Museum of Natural History,* 67 N.Y.2d 836, 837-38, 501 N.Y.S.2d 646, 647, 492 N.E.2d 774 (1986);

17

*Lombardo v. Island Grill Diner*, 276 A.D.2d 532, 716 N.Y.S.2d 578 (2d Dep't 2000).

Plaintiffs have not presented any evidence indicating that APL created the defect in the hinge or had actual notice of a defect. Accordingly, Plaintiffs can only prevail on a constructive notice theory. "To constitute constructive notice, a dangerous condition 'must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit the defendant's employees to discover and remedy it.'" *Cobb v. Indus Ltd. P'ship*, 1999 U.S. Dist. LEXIS 406, No. 98- CV-3549, 1999 WL 115441, at *3 (E.D.N.Y. Jan. 11, 1999) (quoting *Gordon*, 67 N.Y.2d at 837, 501 N.Y.S.2d at 647); *accord Beinert v. PGA Tour, Inc.*, No. 98-CV-1491 (JG), 1999 U.S. Dist. LEXIS 15892, 1999 WL 890579, at *2 (E.D.N.Y. Sept. 29, 1999); *Ruggiero v. Waldbaums Supermarkets*, 242 A.D.2d 268, 269, 661 N.Y.S.2d 37 39 (2d Dep't 1997); *Collins v. Grand Union Co.*, 201 A.D.2d 852, 608 N.Y.S.2d 335, 336 (3d Dep't 1994). "[C]onstructive notice can be inferred from circumstantial evidence, . . . [such as] expert testimony or other evidence that a reasonably prudent technician would have found the defect during a regularly scheduled inspection." *Velez v. Sebco Laundry Sys., Inc.*, 178 F.Supp. 2d 336, 341 (S.D.N.Y. 2001); *Hammond*, 2012 U.S. Dist. LEXIS 10902 (no liability where "there is no evidence that a reasonable inspection would have revealed any defect in the machinery that may have caused this incident").

APL has presented detailed inspection logs with respect to the container indicating that the container was visually inspected numerous times by APL representatives and also that routine maintenance was performed on the container's header bar a few months earlier and no damage or defects were noted at that time. *See* Nastro Aff. Ex. R (Equipment Repair History Detail), Ex. Q (Equipment History Report), Bauernfiend Decl. ¶¶ 10-14; Bauernfiend Reply Decl. ¶¶ 5-10. With respect to inspections, the Equipment History Report lists no fewer than six

18

visual inspections of the container between July and August 2012. Plaintiffs argue inspections are insignificant because they do not indicate that they specifically included the hinge in question. Pl. Rule 56.1 Stmt. ¶ 11. However, according to the maintenance log, the hinge in question was greased to promote header mobility on March 2, 2012. Bauernfiend Reply Decl. ¶¶ 7; Nastro Aff. Ex. R (Equipment Repair History Detail) p.1. The Equipment Repair log also details other repairs made to the container on that same day. *Id.* No damage or defect to the hinge is noted. Plaintiffs have offered no evidence to contradict the inspection history or presented any evidence from which a reasonable juror could conclude that APL had constructive notice of a defect in the hinge. Accordingly, the undersigned respectfully recommends that APL's motion for summary judgment with respect to Plaintiffs' negligence claim be granted.

### 4. Gross Negligence Claims

APL also moves for summary judgment with respect to Plaintiffs' claim of gross negligence, arguing that Plaintiffs have utterly failed to allege conduct giving rises to a claim of gross negligence. APL Mem. at 15. "Gross negligence, used interchangeably with willful negligence, differs 'in kind, not only degree, from claims of ordinary negligence. It is conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing.'" *Charter Oak Fire Ins. Co. v. Trio Realty Co.,* No. 99 Civ. 10827 (LAP), 2002 U.S. Dist. LEXIS 1442, 2002 WL 123506 (S.D.N.Y. Jan. 31, 2002) (quoting *Colnaghi, U.S.A., Inc. v. Jewelers Protection Services, Ltd.,* 81 N.Y.S.2d 821, 823-824, 595 N.Y.S.2d 381, 383, 611 N.E.2d 282 (1993). Gross negligence arises where "there is a reckless indifference to the safety of human life or an intentional failure to perform a manifest duty to the public." *Int'l Mining Corp. v. Aerovias Nacionales de Colombia*, S.A., 57 A.D.2d 64, 67, 393 N.Y.S.2d 405, 407 (1st Dep't 1977) (citing 41 N.Y. Jur. Negligence § 28 now 79 N.Y. Jur. Negligence 2d § 39 (1989)); *see*

*also Bayerische Landesbank v. Aladdin Capital Mgmt, LLC*, 692 F.3d 42, 61 (2d Cir. 2012) ("Recklessness in the context of a gross negligence claim means an extreme departure from the standards of ordinary care, such that the danger was either known to the defendant or so obvious that the defendant must have been aware of it"). Thus, to prevail on a claim for gross negligence under New York law, "a plaintiff must demonstrate that the defendant owed the plaintiff a duty and the defendant failed to exercise 'even slight care' in the discharge of that duty." *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 473 (S.D.N.Y. 2012) (quoting *Food Pageant, Inc. v. Consol. Edison Co.,* 54 N.Y.2d 167, 172, 429 N.E.2d 738, 445 N.Y.S.2d 60 (N.Y. 1981)). "In light of this exacting standard, courts in this district have required that a defendant's conduct be particularly egregious in order to constitute gross negligence." *Media Glow Dig., LLC v. Panasonic Corp. of N. Am.,* No. 16 Civ. 7907 (JFK)(HBP), 2018 U.S. Dist. LEXIS 207922, 2018 WL 6444934 (S.D.N.Y. Dec. 10, 2018).

Plaintiffs have not responded to APL's motion for summary judgment with respect their claim of gross negligence. On the record before the Court, no evidence exists on which a reasonable juror could find that APL's conduct, even if it departed from accepted standards of care, rose to the level of recklessness required to establish a claim for gross negligence. The undisputed evidence before the Court is that APL, and other entities, each inspected the exterior of the container before delivering it to Plaintiff. Therefore, it cannot be said that Defendant failed to exercise even slight care in the discharge of its duty and accordingly, it is respectfully recommended that APL's motion for summary judgment with respect to Plaintiffs' claim for gross negligence be granted.

### 5. Strict Products Liability

In Plaintiffs' Opposition to Defendants' Respective Motions For Summary Judgment,

Plaintiffs state that "Plaintiffs are herewith filing a motion to amend their complaint under Federal Rule of Civil Procedure 15(A)(2) to include a cause of action for strict products liability on the facts already pled." Pls. Mem at 9. However, no motion to amend was ever filed and therefore, Plaintiffs' Complaint does not assert a claim for strict products liability against either Bridgehead or APL. *See* Compl. ¶ ¶ 45-50, asserting strict liability claim against Defendant GJC. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also Dominick & Dominick LLC v. Deutsche Oel & Gas AG*, No. 14-cv-06445 (PKC), 2017 U.S. Dist. LEXIS 136192, 2017 WL 3669619, at *5 (S.D.N.Y. Aug. 24, 2017)( "a party cannot assert a claim for the first time in its motion papers."); *Hickey v. State Univ. of New York at Stony Brook Hosp.*, No. 10 Civ. 1282 (JS) (AKT), 2012 U.S. Dist. LEXIS 105182, 2012 WL 3064170, at *5 (E.D.N.Y. July 27, 2012) (declining to address claims raised for the first time in motion for summary judgment). Additionally, the Court notes that New York courts generally consider strict products liability and negligence claims to be "functionally synonymous," *see Pinello v. Andreas Stihl Ag & Co. KG,* No. 8:08 Civ. 00452, 2011 U.S. Dist. LEXIS 34460, 2011 WL 1302223, at *16 (N.D.N.Y Mar. 31, 2011), and therefore, any proposed amendment to the complaint must be squared with Plaintiffs' concession that "the Bridgehead Defendants may not be held liable for negligence." Pls. Mem. at 5.

Accordingly, it is recommended that Plaintiffs' last minute application at assert a claim for strict products liability against Defendants Bridgehead and APL be denied.

### 6. Loss of Consortium Claim

21

Defendants do not raise an independent basis to dismiss Plaintiff Anna Condeleo's loss of consortium claim arguing only that the loss of consortium claim is derivative of the underlying negligence claims. Indeed, a loss of consortium claim is a derivative claim that is dependent upon the viability of the primary cause of action. *See Reed v. Medford Fire Dep't, Inc.,* 806 F. Supp. 2d 594, 606 (E.D.N.Y. 2011). Because the Court is recommending that Bridgehead and APL are entitled to summary judgment on Plaintiff Alberto Condeleo's negligence claim, the undersigned respectfully recommends that Plaintiff Anna Condeleo's derivative cause of action for loss of consortium be dismissed as well. *See Vega-Santana v. Nat'l R.R. Passenger Corp.,* 956 F. Supp. 2d 556, 562 (S.D.N.Y. 2013) (dismissing derivative claim for loss of consortium because "[w]here the primary cause of action is dismissed on summary judgment, the loss of consortium claim must be dismissed as well"); *Arneauld v. Pentair, Inc.,* No. CV-11-3891 (SJF)(ETB), 2012 U.S. Dist. LEXIS 168185, 2012 WL 5932956 (E.D.N.Y. Nov. 26, 2012) ("dismissal of all of [husband's] substantive claims is fatal to his wife's derivative claim for loss of consortium").

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.,* No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson,*

*Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
      April 23, 2019

                             _____/s/_____
                             ARLENE R. LINDSAY
                             United States Magistrate Judge